| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| **PLAINTIFFS** Oddmund Olav Horve | **DEFENDANTS** Wells Fargo Home Mortgage |
|---|---|

| **ATTORNEYS** (Firm Name, Address, and Telephone No.) Law Offices of Dean Lloyd 425 Sherman Ave. #330, Palo Alto CA 94306 (650) 328-1664 | **ATTORNEYS** (If Known) |
|---|---|

| **PARTY** (Check One Box Only) ☑ Debtor ☐ U.S. Trustee/Bankruptcy Admin ☐ Creditor ☐ Other ☐ Trustee | **PARTY** (Check One Box Only) ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin ☑ Creditor ☐ Other ☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Avoidance of Foreclosure Sale pursuant to 11 U.S.C. §544(a)(3)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- ☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☑ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
- ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☑ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought
Avoidance of Foreclosure Sale, Cancellation of Trustee's Deed, if any, quiet title

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Oddmund Olav Horve | BANKRUPTCY CASE NO.<br>17-10464 AJ | |
| DISTRICT IN WHICH CASE IS PENDING<br>Northern District of California | DIVISION OFFICE<br>Santa Rosa | NAME OF JUDGE<br>Jaroslovski |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | |
|---|---|
| DATE<br>June 30, 2017 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Dean Lloyd<br>Law Offices of Dean Lloyd |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

Dean Lloyd, Bar No. 104647
Dean Lloyd Professional Corporation
425 Sherman Ave., Suite 330
Palo Alto, CA 94306
Telephone: (650) 328-1664
Fax: (650) 328-1666

Attorney for Debtor,
ODDMUND HORVE

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA, SANTA ROSA DIVISION

| | |
|---|---|
| IN RE ODDMUND OLAV HORVE | Case No. 17-10464 AJ |
| | Adv. No. |
| ODDMUND OLAV HORVE,<br>                         Plaintiff, | **Adversary complaint to set aside foreclosure sale pursuant to 11 U.S.C. §544(a)(3)** |
| vs. | |
| WELLS FARGO HOME MORTGAGE,<br>                         Defendant. | |

## INTRODUCTION

Debtor Oddmund Olav Horve (Plaintiff), brings this adversary complaint against Creditor Wells Fargo Home Mortgage (Defendant), to set aside a foreclosure sale that allegedly occurred with respect to his Real Property located at 715 Western Ave., Petaluma, CA 94952 (The Subject Property). Plaintiff alleges as follows:

## PARTIES

1.      Plaintiff ODDMUND HORVE is, and at all times relevant herein was, a resident of the State of California. He is a individual person over the age of 21 and otherwise *sui juris*.

1

2. Defendant WELLS FARGO HOME MORTGAGE is, and at all times relevant herein was, a South Dakota corporation licensed to do, and currently doing business in, the state of California, and is a subsidiary of Wells Fargo Bank, N.A.

## JURISDICTION & VENUE

3. Jurisdiction for this action exists pursuant to 28 U.S.C. §157 and 28 U.S.C. §1334. Venue is proper pursuant to 28 U.S.C. §1409.

4. This adversary proceeding is a core proceeding under 28 U.S.C. §157.

## BACKGROUND

5. Defendant is the beneficiary to a first Deed of Trust secured by the Subject Property. A true and correct copy of the Deed of Trust is attached hereto as Exhibit A, and is incorporated herein by reference as though fully set forth herein.

6. On October 19, 2012, after Plaintiff fell behind on his mortgage payments, as directed by Defendant's agent Sean Powell, Defendant recorded a notice of default with the Sonoma County Recorder's Office. A true and correct copy of the notice of default is attached hereto as Exhibit B and is incorporated herein by reference as though fully set forth herein.

7. On January 25, 2013, Defendant filed a notice of Trustee's sale, with a sale date set for February 20 2013, which was later postponed to March 20, 2013. The amount listed as owing on the notice of Trustee's sale was $561,798.84. A true and correct copy of the Notice of Trustee's sale is attached hereto as Exhibit C and is incorporated herein by reference as though fully set forth herein.

8. On March 20, 2013, Plaintiff's son and daughter-in-law appeared at the appointed place for the auction, the plaza at Freemont Park, located at 860 5th St., Santa Rosa CA. After a diligent search, they did not locate an auctioneer. Allegedly, no qualified bidders appeared at the auction, and the home was sold back to Defendant for $405,350, which represented Defendant's opening bid for the

amounts due and owing. A true and correct copy of the sales instructions is attached hereto as Exhibit D, and is incorporated herein by reference as though fully set forth herein.

9.       To this date Defendant, by its own admission, has not recorded a Trustee's Deed upon sale, despite having over four years to do so. True and correct copies of the pertinent parts of Defendant's responses to special interrogatories, admitting this fact under penalty of perjury, are attached hereto as Exhibit E, and incorporated herein by reference as though fully set forth herein.

10.       On March 25, 2013, Plaintiff filed a complaint against Defendant in the Sonoma County Superior Court, Santa Rosa Division, as case no. SCV253407. Litigation in this case concerns monetary damages for wrongful foreclosure and other causes of action relating to the sale of the Subject Property and Defendant's loan servicing practices. The matter is ongoing, but is currently stayed due to Plaintiff's recent Chapter 13 filing.

11.       On June 12, 2017, Plaintiff filed for Chapter 13 Bankruptcy protection in the United States Bankruptcy Court for the Northern District of California, Santa Rosa Division, as case no. 17-10464 AJ. Plaintiff's Chapter 13 plan has been filed and is currently awaiting confirmation.

**FIRST CAUSE OF ACTION TO AVOID FORECLOSURE SALE UNDER 11 U.S.C. §544(a)(3)**

12.       Plaintiff incorporates and re-alleges the preceding paragraphs as though fully set forth herein.

13.       11 U.S.C. §544(a)(3) allows the Bankruptcy Trustee to "avoid any transfer of property of the Debtor or any obligation incurred by the Debtor that is voidable by ... a bona fide purchaser of real property."

14.       In California, every unrecorded conveyance is void as against a bona fide purchaser. See Cal. Civ. Code §1214.

15.       Defendant admits that it did not record a trustee's deed upon sale, which is required by California law to perfect its interest in the Subject Property. See Cal. Civ. Code §2924h(c).

16.     As Defendant's interest is unperfected under California law, a bona fide purchaser would have no constructive notice of the interest on the property records concerning the Subject Property. The unperfected interest can thus be avoided under 11 U.S.C. §544(a)(3).

WHEREFORE, Plaintiff prays for relief as Follows:

17.     Avoidance of the alleged foreclosure sale of March 20, 2013.

18.     Restoration of Plaintiff's complete ownership interest in the Subject Property.

19.     Cancellation of the promissory note and trust deed securing the Subject Property.

20.     Quiet title to the Subject Property in favor of Plaintiff.

21.     Reformation of the promissory note and the amount currently owing to $405,350.00, as reflected by Defendant's full credit bid, as shown on the sales instructions.

22.     Cancellation of all arrearages, accrued interest, and penalties accruing since the date of the sale.

23.     Any other relief that the Court may deem just and proper.


Date: June 30, 2017

                                Respectfully submitted,


                                Law Offices of Dean Lloyd




                                /s/ Dean Lloyd
                                Attorney for Oddmund Horve, PLAINTIFF

# EXHIBIT A

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

WHEN RECORDED MAIL TO:
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER: 0043275171

NOTE AMOUNT: $574,000.00



**2006090651**

OFFICIAL RECORDS OF
SONOMA COUNTY
EEVE T. LEWIS

**17** PGS

NEW CENTURY TITLE CO.
07/21/2006 14:00 TRD
RECORDING FEE: 55.00
PAID



FOR RECORDER'S USE ONLY

# DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY PAYMENTS OF PRINCIPAL AND INTEREST.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $717,500.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

I.   DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
    (A)  **Security Instrument.** This Deed of Trust, which is dated July 14, 2006, will be called the "Security Instrument."

    (B)  **Borrower.** ODDMUND O HORVE, AN UNMARRIED MAN AND OLAV ODDMUND HORVE AND MELISSA ALEXIS HORVE, HUSBAND AND WIFE sometimes will be called "Borrower" and sometimes simply "I" or "me."

    (C)  **Lender.** WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender." Lender is a FEDERAL SAVINGS BANK, which is organized and exists under the laws of the United States. Lender's address is 1901 Harrison Street, Oakland, CA 94612 .

SD001A (2004-03-2)
DEFERRED INTEREST

DEED OF TRUST-ADJUSTABLE
Page 1

CA

**0 0 3**

LENDER'S USE ONLY

**(D) Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. **$574,000.00**, plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by **August 1, 2036** ("Maturity Date").

**(E) Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

**(F) Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

**(G) Person.** Any person, organization, governmental authority or other party will be called "Person."

**(H) Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee."

## II. BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)     pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)     pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)     keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III. DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below:

(i)     The Property which is located at **715 WESTERN AVE # 1 # 2 # 3, PETALUMA, CA 94952-2545**. The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)     All buildings and other improvements that are located on the Described Property;

Case: 17-01018   Doc# 1   Filed: 06/30/17   Entered: 06/30/17 14:16:55   Page 9 of 40

(iii)     All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)     All rents or royalties and other income from the Described Property;

(v)     All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)     All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)     All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)     All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)     All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)     All of the amounts that I pay to Lender under Paragraph 2 below.

## IV.     BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

### COVENANTS

I promise and I agree with Lender as follows:

## 1.     BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

## 2.     PAYMENTS FOR TAXES AND INSURANCE

### (A)     Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

**(B)     Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

Case: 17-01018   Doc# 1   Filed: 06/30/17   Entered: 06/30/17 14:16:55   Page 11 of 40

### 3. APPLICATION OF BORROWER'S PAYMENTS

Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

### 4. BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien.** I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

### 5. BORROWER'S OBLIGATION TO MAINTAIN INSURANCE

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

6.  **BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

Case: 17-01018    Doc# 1    Filed: 06/30/17    Entered: 06/30/17 14:16:55    Page 13 of 40

## 7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

## 8. LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

## 9. AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

Case: 17-01018    Doc# 1    Filed: 06/30/17    Entered: 06/30/17 14:16:55    Page 14 of 40

**10. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

   **(A)    Borrower's Obligations**
   Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

   Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

   **(B)    Lender's Rights**
   Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

**11.    OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

   Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

   Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

   Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

**12.    MAXIMUM LOAN CHARGES**

   If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

Case: 17-01018    Doc# 1    Filed: 06/30/17    Entered: 06/30/17 14:16:55    Page 15 of 40

13. **LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

14. **NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **715 WESTERN AVE # 1 # 2 # 3, PETALUMA, CA 94952-2545.** A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

15. **GOVERNING LAW; SEVERABILITY**

This Security Instrument and the Secured Notes shall be governed by and construed under **federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located.** In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

16. **BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

17. **LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

Case: 17-01018   Doc# 1   Filed: 06/30/17   Entered: 06/30/17 14:16:55   Page 16 of 40

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and the cost of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.    INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

**19.    CLERICAL ERRORS**

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.    LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**21.    WAIVER OF STATUTE OF LIMITATIONS**

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

**22.    CAPTIONS**

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**23.    MODIFICATION**

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**24.    CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

**(A)**    If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

Case: 17-01018    Doc# 1    Filed: 06/30/17    Entered: 06/30/17 14:16:55    Page 17 of 40

**(B)** The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

**(C)** If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master** or **blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master** or **blanket** policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such **master** or **blanket** policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

**(D)** I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the **master** or **blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

## 25. FUTURE ADVANCES

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

Case: 17-01018   Doc# 1   Filed: 06/30/17   Entered: 06/30/17 14:16:55   Page 18 of 40

## 26. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

    (i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

    (ii)    Lender approves the creditworthiness of the transferee in writing;

    (iii)    transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

    (iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the then outstanding balance of Principal and interest under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

    (v)    the transferee executes an assumption agreement which is satisfactory to Lender. Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

## 27. SUBSTITUTION OF TRUSTEE

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

DEED OF TRUST-ADJUSTABLE
Page 12

CA

Case: 17-01018   Doc# 1   Filed: 06/30/17   Entered: 06/30/17 14:16:55   Page 19 of 40

**28. RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

**29. RECONVEYANCE**

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

**30. STATEMENT OF OBLIGATION**

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

**31.    (    )    QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**32.    ( X )    OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

**( X )    VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

Case: 17-01018   Doc# 1   Filed: 06/30/17   Entered: 06/30/17 14:16:55   Page 21 of 40

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

### (PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

### BORROWER(S):

_____ (Seal)
ODDMUND O HORVE

_____ (Seal)
OLAV ODDMUND HORVE

_____ (Seal)
MELISSA ALEXIS HORVE

### ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

# E X H I B I T "A"
## LEGAL DESCRIPTION

**LOAN NO. 0043275171**

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF **SONOMA** STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

A portion of Lot No. 186, as the same is laid down upon the Official Map of said City of Petaluma, made by Jas. T. Stratton, Surveyor, as shall commence at a point on the Southerly line of Western Avenue, distance Westerly from the corner of Baker Street, which is the most Northerly corner of said Lot No. 186, 226 feet; thence Southeasterly to a point from which a line drawn 61 feet will strike the Southwest corner of the lands conveyed by John A. McNear to Eliza Jane White, by deed dated August 20, 1886; thence Easterly from the said point, 61 feet to the aforesaid Southwest corner of White's land which is 168 feet from the Westerly line of Baker Street; thence Northwesterly and along the line of said White's land which is 168 feet from the Westerly line of Baker; thence Northwesterly and along the line of said White's land to a point on the Southerly lien of Western Avenue, distant Westerly from Baker Street 150 feet; thence Westerly and along the line of Western Avenue, 76 feet to the point of beginning.

Commonly known as:        715 Western Avenue, #1, #2 and #3
APN:                008-031-014-000

Case: 17-01018   Doc# 1   Filed: 06/30/17   Entered: 06/30/17 14:16:55   Page 23 of 40

# ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of ___SONOMA___ } ss.

On ___July 17, 2006___ before me, ___Betty J. Ferolito, Notary Public,___,
(DATE)　　　　　　　　　　　　　　　　　　　　　(NOTARY)

personally appeared ___ODDMUND O. HORVE, OLAV ODDMUND HORVE AND MELISSA ALEXIS HORVE,___
(SIGNER(S))

☐ personally known to me　- OR-　☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

> BETTY J. FEROLITO
> COMM. #1675564
> NOTARY PUBLIC - CALIFORNIA
> SONOMA COUNTY
> My Comm. Expires June 16, 2010

WITNESS my hand and official seal.

_____
NOTARY'S SIGNATURE

## ════ OPTIONAL INFORMATION ════

The information below is not required by law. However, it could prevent fraudulent attachment of this acknowledgment to an unauthorized document.

### CAPACITY CLAIMED BY SIGNER (PRINCIPAL)

☐ INDIVIDUAL
☐ CORPORATE OFFICER

_____
TITLE(S)

☐ PARTNER(S)
☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☐ OTHER: _____

_____
_____

**SIGNER IS REPRESENTING:**
NAME OF PERSON(S) OR ENTITY(IES)

_____
_____

### DESCRIPTION OF ATTACHED DOCUMENT

_____
TITLE OR TYPE OF DOCUMENT

_____
NUMBER OF PAGES

_____
DATE OF DOCUMENT

_____
OTHER

APA 1/94　　　　　　　VALLEY-SIERRA, 800-362-3369

This is certified to be a correct copy of the original record
if it bears the seal imprinted in purple ink, the date of
issuance and an original signature.

**APR 2 1 2017**

DATE

WILLIAM F. ROUSSEAU, Clerk-Recorder
Sonoma County, Calif.

By _____
DEPUTY

# EXHIBIT B



# 2012103885

OFFICIAL RECORDS OF
SONOMA COUNTY
JANICE ATKINSON

TITLE COURT SERVICE
10/19/2012 09:40 NTDF
RECORDING FEE: $22.00
PAID

**4** PGS



Recording requested by:
LSI Title Company

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

APN #: 008-031-014-000
Property Address:
715 WESTERN AVE # 1 # 2 # 3
PETALUMA, CALIFORNIA 94952


DFF20120015003470

Space above this line for Recorder's use only

Trustee Sale No. : 20120015003470      Title Order No.: 120345962

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
## DEED OF TRUST

IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS
IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your
account in good standing by paying all of your past due payments plus permitted costs and expenses
within the time permitted by law for reinstatement of your account, which is normally five business
days prior to the date set for the sale of your property. No sale date may be set until approximately 90
days from the date this Notice of Default may be recorded (which date of recordation appears on this
notice).

This amount is $36,887.30 as of 10/17/2012 and will increase until your account becomes current. While
your property is in foreclosure, you still must pay other obligations (such as insurance and taxes)
required by your note and deed of trust or mortgage. If you fail to make future payments on the loan,
pay taxes on the property, provide insurance on the property, or pay other obligations as required in
the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order
to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a
condition of reinstatement that you provide reliable written evidence that you paid all senior liens,
property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire
amount you must pay. You may not have to pay the entire unpaid portion of your account, even though
full payment was demanded, but you must pay all amounts in default at the time payment is made.
However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the
notice of sale is posted (which may not be earlier than three months after this notice of default is
recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of
the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both
(1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the
obligation being foreclosed upon or a separate written agreement between you and your creditor

Case: 17-01018   Doc# 1   Filed: 06/30/17   Entered: 06/30/17 14:16:55   Page 27 of 40

**IMPORTANT NOTICE**
**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**

Trustee Sale No. : 20120015003470        Title Order No.: 120345962

permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

WELLS FARGO HOME MORTGAGE, A DIVISION OF WELLS FARGO BANK, N.A.
c/o NDEX WEST, LLC
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
(866) 795-1852

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN THAT: NDEX WEST, LLC is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated 07/14/2006, executed by ODDMUND O HORVE AND OLAV ODDMUND HORVE AND MELISSA ALEXIS HORVE, as Trustor, to secure obligations in favor of WORLD SAVINGS BANK, FSB, as Beneficiary Recorded on 07/21/2006 as Instrument No. 2006090651 of official records in the Office of the Recorder of SONOMA County, California, as more fully described on said Deed of Trust. Including a Note(s)/ Unconditional Guaranty which had a principal amount of $574,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 12/1/2011 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES, IF ANY.

NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.

Case: 17-01018   Doc# 1   Filed: 06/30/17   Entered: 06/30/17 14:16:55   Page 28 of 40

**IMPORTANT NOTICE**
**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**

Trustee Sale No. : 20120015003470        Title Order No.: 120345962

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**DATED: 10/17/2012**

**NDEX WEST, LLC as Agent for Beneficiary**

By: _____

**Meriel Lee**

Case: 17-01018   Doc# 1   Filed: 06/30/17   Entered: 06/30/17 14:16:55   Page 29 of 40

# DECLARATION OF COMPLIANCE

*(California Civil Code Section 2923.5(b))*

Wells Fargo Bank, N.A.
3476 Stateview Blvd.
Fort Mill, SC 29715

Borrower: ODDMUND O HORVE
Co Borrower: OLAV ODDMUND HORVE, MELISSA ALEXIS HORVE
Property Address: 715 WESTERN AVE #1 #2 #3
PETALUMA CA 94952

The undersigned mortgagee, beneficiary or authorized agent (collectively, the "Beneficiary") represents and declares that [indicate "X" in the applicable box]:

☐ The Beneficiary has contacted the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure in compliance with California Civil Code Section 2923.5. Thirty days or more have elapsed since the initial contact with the borrower.

☒ The Beneficiary tried with due diligence but was unable to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by California Civil Code Section 2923.5. Thirty days or more have elapsed since these due diligence efforts were completed.

☐ The mortgagee, beneficiary or authorized agent was not required to comply with California Civil Code Section 2923.5 because:

    ☐ The real property is not "owner-occupied" residential real property as defined by the statute.

    ☐ The deed of trust was not recorded between January 1, 2003 and December 31, 2007.

    ☐ The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary or authorized agent.

    ☐ The borrower has contracted with someone whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their loan obligations.

    ☐ The borrower has filed for bankruptcy under Chapter 7, 11, 12 or 13 of Title 11 of the United States Code, and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case or granting relief from stay.

Dated: ___08/27/2012___

_Micaela D Hayes_
Wells Fargo Bank, N.A.

___Micaela D Hayes___
VP of Loan Documentation

053_CA_V2

This is certified to be a correct copy of the original record
if it bears the seal imprinted in purple ink, the date of
issuance and an original signature.

**APR 2 1 2017**

DATE

WILLIAM F. ROUSSEAU, Clerk-Recorder
Sonoma County, Calif.

By _R. Hirschi_

DEPUTY

# EXHIBIT C

76

Recording requested by:
**LSI Title Company**

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
(866) 795-1852

APN #: 008-031-014-000
Property Address:
715 WESTERN AVE # 1 # 2 # 3
PETALUMA, CALIFORNIA 94952


NOTS20120015003470



**TITLE COURT SERVICES**
01/25/2013 09:36 NTTS
RECORDING FEE: $18.00
PAID

## 2013008157

OFFICIAL RECORDS OF
SONOMA COUNTY
WILLIAM F ROUSSEAU

**2**



Space above this line for Recorder's use only

Trustee Sale No. : 20120015003470          Title Order No.: 120345962          FHA/VA/PMI No.:

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 07/14/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

NDEX WEST, LLC, as duly appointed Trustee under and pursuant to Deed of Trust Recorded on 07/21/2006 as Instrument No. 2006090651 of official records in the office of the County Recorder of SONOMA County, State of CALIFORNIA.

EXECUTED BY:     ODDMUND O HORVE AND OLAV ODDMUND HORVE AND MELISSA ALEXIS HORVE,
WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by 2924h(b), (payable at time of sale in lawful money of the United States).
DATE OF SALE:     02/20/2013     TIME OF SALE:     10:00 AM
PLACE OF SALE:     IN THE PLAZA AT FREMONT PARK LOCATED AT 860 FIFTH STREET, SANTA ROSA, CA 95401.
STREET ADDRESS and other common designation, if any, of the real property described above is purported to be:
715 WESTERN AVE # 1 # 2 # 3, PETALUMA, CALIFORNIA 94952
APN#:     008-031-014-000

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $561,798.84. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

FCUS_NoticeOfTrusteeSale.rpt - Record - 03/06/012 - Ver-31

Case: 17-01018     Doc# 1     Filed: 06/30/17     Entered: 06/30/17 14:16:55     Page 33 of 40

Trustee Sale No. : 20120015003470    Title Order No.: 120345962    FHA/VA/PMI No.:

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 714-730-2727 for information regarding the trustee's sale or visit this Internet Web site www.lpsasap.com for information regarding the sale of this property, using the file number assigned to this case 20120015003470. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

FOR TRUSTEE SALE INFORMATION PLEASE CALL:
**AGENCY SALES & POSTING 2**
**3210 EL CAMINO REAL, SUITE 200**
**IRVINE, CA 92602**
**714-730-2727**
**www.lpsasap.com**

NDEx West, L.L.C. as Trustee

BY: Ric Juarez

Dated: 01/23/2013

NDEx West, L.L.C. MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Case: 17-01018    Doc# 1    Filed: 06/30/17    Entered: 06/30/17 14:16:55    Page 34 of 40

# EXHIBIT D

NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
Telephone:    (866) 795-1852
Telecopier:   (972) 661-7800

# SALE INSTRUCTIONS

March 20, 2013

| | |
|---|---|
| **To:** | **Agency Sales & Posting 2** |
| **Your Order Number :** | 4352166 |
| **County:** | SONOMA |
| **Our File Number :** | 20120015003470 |
| **Property Address:** | 715 WESTERN AVE # 1 # 2 # 3 |
| | PETALUMA, CALIFORNIA  94952 |

**A SALE HAS BEEN SCHEDULED FOR:**          03/20/2013  AT  10:00 AM

## YOU ARE INSTRUCTED TO:

☒  **CONDUCT A TRUSTEE'S SALE**

**Bidding instructions are as follows:**
    Specified Bid:        $405,350.00

**Please contact our office as soon as possible with sale results information.**

Case: 17-01018    Doc# 1    Filed: 06/30/17    Entered: 06/30/17 14:16:55    Page 36 of 40

# EXHIBIT E

1  Robert A. Bailey (# 214688)
   rbailey@afrct.com
2  Daniel A. Armstrong (# 270175)
   darmstrong@afrct.com
3  ANGLIN, FLEWELLING, RASMUSSEN,
   CAMPBELL & TRYTTEN LLP
4  301 N. Lake Ave, Suite 1100
   Pasadena, CA 91101-4158
5  Telephone: (626) 535-1900
   Facsimile: (626) 577-7764
6
   Attorneys for Defendant
7  WELLS FARGO BANK, N.A., successor by
   merger with Wells Fargo Bank Southwest, N.A.,
8  f/k/a Wachovia Mortgage, FSB, f/k/a World
   Savings Bank, FSB (erroneously sued as "Wells
9  Fargo Home Mortgage, a division of Wells
   Fargo Bank, N.A.") ("Wells Fargo")
10

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                      FOR THE COUNTY OF SONOMA

13

14  OLAV HORVE, an individual; MELISSA        Case No.: SCV-253407
    HORVE. an individual; and ODDMUND
15  HORVE, an individual,                     Assigned for all purposes to:
                                              Hon. Nancy Case Shaffer, Judge
16              Plaintiffs,                    Department 16

17       v.                                   **WELLS FARGO'S RESPONSES TO
                                              PLAINTIFFS' SPECIAL
18  BARRETT DAFFIN FRAPPIER TREDER            INTERROGATORIES, SET ONE**
    and WEISS; ERICA JONES, an individual;
19  CARLIE FISHER, an individual,
    EDWARD TREDER, and individual,           Trial Date:    August 11, 2017
20  DARLINE HERNANDEZ, an individual;        Action Filed:  March 25, 2013
    NDEX WEST, LLP, a Delaware Limited
21  Liability Company; WELLS FARGO
    BANK, N.A., a South Dakota corporation
22  (Successor in interest to WORLD
    SAVINGS BANK, FSB); WELLS FARGO
23  HOME MORTGAGE, a division of
    WELLS FARGO BANK, N.A.;
24  WACHOVIA BANK, a Division of
    WELLS FARGO BANK, N.A.; and DOES
25  6 through 25, inclusive,

26              Defendants.

27

28

93000/BR0884/01720931-1                           1
WELLS FARGO'S RESPONSES TO PLAINTIFFS' SPECIAL INTERROGATORIES, SET ONE

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

**RESPONSE TO INTERROGATORY NO. 2:**

Wells Fargo objects to this interrogatory to the extent that the term "foreclose" is ambiguous. Wells Fargo substituted NDEx West as trustee for the deed of trust at issue in this action to notice and conduct the foreclosure sale of the Subject Real Property in accordance with the terms of the deed of trust.

**INTERROGATORY NO. 3:**

Was there a contract between you and NDEX WEST, LLC to foreclose on the Subject Real Property?

**RESPONSE TO INTERROGATORY NO. 3:**

Wells Fargo objects to this interrogatory to the extent that the term "foreclose" is ambiguous. Subject to the foregoing objection, Wells Fargo responds: yes.

**INTERROGATORY NO. 4:**

If there was a contract, what was the date of execution of the contract?

**RESPONSE TO INTERROGATORY NO. 4:**

Wells Fargo objects to this interrogatory to the extent that the term "foreclose" is ambiguous. Subject to the foregoing objection, Wells Fargo responds: November 6, 2012.

**INTERROGATORY NO. 5:**

What were the terms and conditions of any contract between you and NDEX WEST, LLC?

**RESPONSE TO INTERROGATORY NO. 5:**

Wells Fargo substituted NDEx West as trustee for the deed of trust at issue in this action to notice and conduct the foreclosure sale of the Subject Real Property in accordance with the terms of the deed of trust.

**INTERROGATORY NO. 6:**

Did you receive a trustees' deed after the alleged foreclosure sale of March 20, 2013?

**RESPONSE TO INTERROGATORY NO. 6:**

Wells Fargo objects to this interrogatory to the extent that the term "receive" is ambiguous. Subject to the foregoing objection, Wells Fargo responds: NDEx West, trustee under

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1 the deed of trust, retained possession of the trustee's deed upon sale.

2 **INTERROGATORY NO. 7:**

3      Is NDEX WEST, LLC the exclusive trustee for trust deeds in which WELLS FARGO

4 BANK, N.A. or a division of WELLS FARGO BANK, N.A. has a beneficial interest?

5 **RESPONSE TO INTERROGATORY NO. 7:**

6      No.

7 **INTERROGATORY NO. 8:**

8      Did you request a trustee's deed be prepared by trustee NDEX WEST, LLC after the

9 alleged foreclosure sale of March 20, 2013?

10 **RESPONSE TO INTERROGATORY NO. 8:**

11      Wells Fargo instructed the trustee to retain possession of the trustee's deed upon sale

12 following the foreclosure sale of March 20, 2013.

13 **INTERROGATORY NO. 9:**

14      How much was paid to NDEX WEST, LLC to conduct the alleged foreclosure sale for

15 the Subject Real Property on March 20, 2013?

16 **RESPONSE TO INTERROGATORY NO. 9:**

17      Wells Fargo objects to this interrogatory on the grounds that it is not relevant to the

18 subject matter of this dispute.

19 **INTERROGATORY NO. 10:**

20      Is NDEX WEST the only company that WELLS FARGO BANK, N.A. contracts with to

21 conduct foreclosure sales in the state of California?

22 **RESPONSE TO INTERROGATORY NO. 10:**

23      No.

24 **INTERROGATORY NO. 11:**

25      Did WELLS FARGO BANK, N.A. or a division of WELLS FARGO BANK, N.A.

26 contract with CENTURY 21 to evict the Plaintiffs and their tenants after March 20, 2013?

27 **RESPONSE TO INTERROGATORY NO. 11:**

28      No.

93000/BR0884/01720931-1

5

WELLS FARGO'S RESPONSES TO PLAINTIFFS' SPECIAL INTERROGATORIES, SET ONE